# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY G. ROHWER, | ‖ | |
| Plaintiff, | ‖ | No. C11-4110-LTS |
| vs. | ‖ | **ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ‖ | |
| Defendant. | ‖ | |

---

## *Introduction*

Plaintiff Jeffrey Rohwer seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). Rohwer contends the administrative record ("AR") does not contain substantial evidence to support the Commissioner's decision that he is not disabled.

## *Background*

Rohwer was born in 1989 and completed high school. He previously worked as a pizza baker, a short order cook, a farm worker, a kitchen helper, and an industrial cleaner. AR 28. Rohwer protectively filed for SSI on March 23, 2009, alleging disability beginning on March 23, 2009, due to a mental disorder and bi-polar disorder. AR 110, 137. His claims were denied initially and on reconsideration. AR 55-58, 61-64. Rohwer requested a hearing before an Administrative Law Judge ("ALJ"). AR 67. On December 6, 2010, ALJ Marsha Stroup held a hearing via video conference

during which Rohwer, Rohwer's father, and a vocational expert ("VE") testified.  AR 23-51.

On January 6, 2011, the ALJ issued a decision finding Rohwer not disabled since March 23, 2009.  AR 10-18.  Rohwer sought review of this decision by the Appeals Council, which denied review on October 25, 2011.  AR 1-3.  The ALJ's decision thus became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

On December 22, 2011, Rohwer filed a complaint in this court seeking review of the ALJ's decision.  On January 18, 2012, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to then-Chief United States Magistrate Judge Paul A. Zoss for final disposition and entry of judgment.  On June 8, 2012, the case was reassigned to me.  The parties have briefed the issues and the matter is now fully submitted.

## *Summary of Evidence*

I have reviewed the entire administrative record and find the following evidence relevant to Rohwer's claim:

### A.    *Medical Evidence of Mental Impairment*

Rohwer was admitted to the Mental Health Institute in Cherokee, Iowa, by his parents on October 30, 2008.  AR 204.  They reported he had made suicidal statements and they were afraid he had attempted suicide.  *Id.*  His Global Assessment of Functioning ("GAF") score was 40[1] upon admission and Rohwer stated he had been using alcohol, marijuana, steroids, and methamphetamine.  *Id.*  A drug screen was

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF of 31 to 40 indicates the individual has a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . . ." *Id.*

performed, but came back negative.[2]  AR 206.  His attitude was agitated and irritable and he also seemed paranoid.  AR 205.  His speech was pressured and fast and his thought process was tangential with flight of ideas.  He denied suicidal ideation or homicidal ideation.  His judgment and insight were impaired.  *Id.*  At the hospital, Rohwer was diagnosed with bipolar disorder and prescribed lithium.  AR 202.  Upon discharge on November 6, 2008, Rohwer was assessed a GAF score of 65[3] and his attitude was cooperative, friendly, and attentive.  AR 205.  He described his mood as "crazy good" and his thought process was logical and intact.  His judgment and insight were also good.  Appointments were scheduled for Rohwer to follow up on medication management, substance abuse assessment, as well as treatment and lithium level monitoring.  AR 207.

Rohwer began seeing Kara Hovland, a licensed medical health counselor and Laurie Warren, PA-C, for medication management in January 2009.  AR 214-17; 224-26.  At that time he was feeling hopeless, paranoid, and anxious, and was obsessing over things.  AR 218.  He felt like his medication was not working.  *Id.*  He admitted he was using marijuana again and Ms. Hovland stated he needed to have addiction treatment before mental health therapy would work.  AR 221-22.  She helped him arrange inpatient treatment therapy at Jackson Recovery Centers.  *Id.*

Rohwer began seeing Karen Rupp, ARNP, to monitor his lithium levels in November 2008.  AR 246-47.  On November 24, 2008, Rohwer admitted he had started using drugs again.  AR 246.  Ms. Rupp noted that Rohwer was going to begin outpatient treatment at Jackson Recovery Centers in early December 2008 and he was going to attend Western Iowa Tech in January 2009.  AR 243-44.  In mid-December, Ms. Rupp noted Rohwer had denied recent drug use and he was experiencing improved

---

[2] Rohwer later admitted to his therapist at Jackson Recovery Centers on November 25, 2008, that he was high when he was committed to the mental health institute.  AR 289.

[3] A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well.  DSM-IV at 34.

sleep and less anxiety.  AR 241.  In February 2009, Rohwer reported he was doing well.  He was seeing a therapist and counselor on a regular basis, doing well in school, sleeping well at night and having less anxiety.  AR 240.  But in March 2009, Rohwer reported he had been having difficulty.  He was feeling anxious and irritable and his mood was not stable.  He had been off lithium for at least a week.  AR 238.  He denied any alcohol or drug use and had moved back home and was unemployed.  AR 238.

Rohwer was admitted to the Mental Health Institute in Cherokee, Iowa, again on May 20, 2009, for evaluation and treatment of mood instability, aggressive and threatening behavior, relapse into substance abuse and noncompliance with medications.  AR 279.  He had been off his medication for three months.  AR 282.  His GAF score was 15[4] upon admission and Rohwer was acutely distressed and agitated.  He was restless and his mood was described as sad.  *Id.*  His affect was labile, ranging from anger to near tearfulness to laughing and joking.  *Id.*  His thought process was tangential and his thought content was significant for grandiosity.  He denied suicidal or homicidal ideation, intent, or plan and his judgment and insight were impaired.  *Id.*  The physician noted that he appeared to be abusing his Klonopin medication to address his anxiety.  AR 280.  He was prescribed Depakote and he stabilized quickly on that medication.  *Id.*  During this visit, it was also discovered that Rohwer had an abnormally low testosterone level and gastroesophageal reflux disease.  AR 280.

Rohwer was discharged on June 4, 2009.  His mood had improved and his affect was pleasant and euthymic.  AR 279.  His speech was fluent and no longer pressured.  *Id.*  He was able to stay on topic, his thought process was goal-directed and his thought content was significant for optimism for his future.  *Id.*  He was assessed a GAF score of 60 and released to Synergy Center for chemical dependency treatment.  AR 280-81.

---

[4] A GAF score of 11 to 20 indicates some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent, manic excitement).  DSM-IV at 34.

Rohwer's records from Synergy Center indicate that when using drugs he was not taking his medication as prescribed, which led to dramatic changes in his mood. AR 287.  Rohwer reported his last use of methamphetamine was October 31, 2008.[5] AR 288.  Rohwer also acknowledged his history of using alcohol, tranquilizers, and opiates, and he was unsure of his last use of those chemicals.  *Id.*  While in inpatient treatment, Rohwer attended all groups, individual sessions, meditation, AA/NA meetings, and lectures as directed.  AR 287.  He successfully completed all of the inpatient treatment requirements and was discharged to begin outpatient treatment on July 6, 2009.  *Id.*

### B.    *Work Performance Assessment*

Heather Plum, a manager at Godfather's Pizza where Rohwer previously worked, completed a work performance assessment.  AR 172-73.  She rated Rohwer's functional capabilities in the workplace as mostly adequate and good, except for his ability to adhere to schedules, which she rated as poor.  AR 172.  She noted Rohwer did not call or show up to work on a couple occasions.  Ms. Plum said Rohwer was "very quiet but for the most part did a good job and had a good attitude."  AR 173.  She said Rohwer never called to quit his job; he just never showed up to work again. *Id.*

### C.    *Function Reports*

Rohwer completed a function report in which he indicated he can cook for himself and will occasionally do laundry.  AR 166.  He wrote that he goes to a friend's house three or four days a week.  AR 167.  He said his mental impairment affects his ability to concentrate and remember things, complete tasks, understand and follow

---

[5] In an interpretive summary dated November 25, 2008, Rohwer stated his last use of methamphetamine was November 14 or 15 and he had last used marijuana four days earlier. AR 290.

instructions, and get along with others.  AR 168.  He said that he does not finish what he starts and he loses focus when trying to follow instructions.  *Id.*  He also said he does not handle stress or changes in routine well.

Rohwer's father, Dean Rohwer, completed a third-party function report.  AR 156-63.  He indicated Rohwer would sleep two to three hours, get up for a few hours, and then go back to sleep again during both the day and night.  AR 156-57.  He said Rohwer had to be reminded to take his medication and that he had to be constantly supervised when asked to complete a task, otherwise he would forget it.  AR 158.  He reported Rohwer would spend time with friends about one to two times per week.  AR 160.  Mr. Rohwer also stated his son would start fights at home and that he and his wife had to call the police on many occasions because Rohwer would get violent.  AR 161.  He indicated Rohwer had difficulties with memory and concentration, completing tasks, understanding and following instructions, and getting along with others.  *Id.*  He said Rohwer could only pay attention a few minutes and "very poorly" followed spoken instructions.  *Id.*

### D.    *State Agency Psychological Consultants*

Scott Shafer, Ph.D., performed a mental residual functional capacity ("RFC") assessment on May 12, 2009.  He found that Rohwer demonstrated moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods.  AR 252-53.  In all other areas Dr. Shafer concluded Rohwer was not significantly limited.  *Id.*  Dr. Shafer concluded Rohwer's mental impairment did not meet or equal a referenced listing.  He reasoned:

> The claimant has been able to obtain and work jobs in the past.  His former employer rated him as adequate or better in all categories except for attendance.  MER indicates improvement with abstinence and treatment.  Claimant has not been consistently treatment compliant and was

requesting stimulants from TS.  ADLs indicate the claimant is able to participate in his daily responsibilities and negotiate the community the independently.  The claimant retains the ability to understand, remember, and follow simple instructions.  His attention, concentration, and pace are adequate for routine tasks.  He can interact appropriately with the public, coworkers, and supervisors on a superficial level.  His judgment is adequate to adjust to changes in the workplace.

AR 254-55.

Dr. Shafer also performed a psychiatric review technique and found that Rohwer exhibited mild restriction in activities of daily living and maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace but had no episodes of decompensation.  AR 266.  He concluded that the evidence did not establish the presence of the "C" criteria.  AR 267.

Sandra Davis, Ph.D., also performed a mental RFC assessment and psychiatric review technique on August 3, 2009, after Rohwer alleged worsening of his condition and ongoing treatment upon reconsideration.  AR 291-308.  In the mental RFC assessment, she concluded that Rohwer had moderate limitations in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public and respond appropriately to changes in the work setting.  AR 305-06.  In the narrative section, Dr. Davis said Rohwer appeared to be able to concentrate, at least at the level of simple instructions and maybe some detailed ones.  She stated: "He may have some residual paranoia and would do best in an environment that does not require intensive interpersonal interaction.  He has had past problems with

7

attendance when he worked.  He may need preparation for rapid or complex change."
AR 308.  Dr. Davis noted that Rohwer's credibility was partially eroded because it did
not appear his condition had worsened significantly and the medical evidence was
relatively consistent from before.  *Id.*

In her psychiatric review technique, she found that Rohwer had mild restriction
in activities of daily living and moderate difficulties in maintaining social functioning
and maintaining concentration, persistence, or pace.  AR 301.  Rohwer also had one or
two episodes of decompensation.   AR 301.   Under the 12.04 listing criteria for
Affective Disorders, Dr. Davis noted that Rohwer had bipolar disorder, but that a
medically determinable impairment was present that did not precisely satisfy the
diagnostic criteria because substance induced mood disorder needed to be ruled out.
AR 294.  Under the 12.09 listing criteria for substance addiction disorders, Dr. Davis
also noted that medically determinable impairments were present that did not precisely
satisfy the diagnostic criteria.   Those impairments included opioid dependence,
polysubstance abuse, and anabolic steroid abuse.  AR 299.

***Hearing Testimony***

*A.    Plaintiff's Testimony*

At the hearing, Rohwer testified he was 21 years old, a high school graduate and
was currently living with his parents.  AR 27.  He confirmed that he had previously
worked as a pizza baker, short order cook, a farm worker, a kitchen helper, and an
industrial cleaner, but stated he had not worked at a job for longer than six months.
AR 28.  He said he was no longer working because he would get depressed and quit.
*Id.*  Rohwer testified he had bipolar disorder and was currently being treated at Seasons
Center.  AR 29.  He was taking Clonazepam at the time of the hearing and said if he
did not take his medication he would be aggressive and dysfunctional and would
"probably be committed again."  AR 29-30.  The ALJ noted that he seemed very down
and depressed and Rohwer said this was his usual mood.  AR 30.  He acknowledged

that he had previous substance abuse problems with methamphetamine and alcohol, but said he stopped using methamphetamine in 2008 and stopped using alcohol in spring 2009. *Id.*

Rohwer testified he was committed in 2008 and 2009. AR 30-31. He had attempted suicide by drinking alcohol with his medications. AR 31. Since his commitment in 2009, Rohwer stated his medications keep him somewhat stable. He said he thinks about suicide on a daily basis, but does not want to act on it. AR 32.

In explaining his daily activities, Rohwer said he would get out of bed every day, but mostly stayed in the house and did not change out of the clothes he slept in. AR 32. He would usually get out of the house twice a month for appointments. He would help his dad with chores "once in a while" as long as they were in the house. AR 33. He said he sometimes did not feel like eating and when he did, he would eat in his room. Rohwer said he had a cat, but his mother took care of it. During the day he said, "I usually do nothing. Sit in my room, stare at the wall and think of a way out and that's the honest truth." *Id.* He did not sleep well and would wake up a lot during the night. *Id.* He could not recall a time where he felt good. AR 34. The ALJ asked if there was anything that made him happy and he replied, "I could care less what happens right now" and "there's nothing." *Id.* He said he had felt this way since eighth or ninth grade and explained he became disconnected from people and it spiraled downhill, adding "I don't know if I want to continue living like this." AR 35. He said he was not close to his parents, siblings or any friends. *Id.*

When asked about his past work, Rohwer said he got a job because his parents told him to get one and to try to be functional. AR 35. He said he did not like any of his jobs. The ALJ also asked about any dreams or aspirations he had, and Rohwer answered, "No interest, there is no interest, there's nothing in my life." *Id.* Rohwer testified that he had attempted college on two occasions. His latest attempt was at Western Iowa Tech in January 2009, which he said ended after two weeks. When asked why, Rohwer answered: "Because I'm tired of living and I'm tired of dealing

with people and I'm tired of seeing people and I'm tired of everything."   AR 36. Before that, he attended Iowa Lakes Community College for the fall 2007 semester. *Id*.   In 2008, he worked for Godfather's Pizza for two months and then for his father during the summer.  AR 37.

Rohwer's attorney asked about Rohwer's other medical conditions and his financial situation.   Rohwer testified he has abnormally low testosterone levels, which requires injections twice per month and blood panels every six months.   AR 41.   He was not sure whether this condition affected his motivation or lack of enthusiasm, but he thought he had been told that the combination of his bipolar disorder and low testosterone levels made him feel that way.   AR 41-42.   Rohwer said his parents pay for his treatment and medication and there are some medications that he has been prescribed but no longer takes because his parents cannot pay for them.   AR 43.

## B.     *Dean Rohwer's Testimony*

Rohwer's father also testified at the hearing.    When asked about Rohwer's commitments in 2008 and 2009, he testified "Jeff was either going to harm himself or harm others.   He had been threatening to kill himself.   He'd been threatening me and his whole family, his brother.   He threatened to kill some of his friends, just out of control."  AR 44.

Rohwer's father also testified about the two times his son had worked for him. In 2008, he said he had trouble keeping Rohwer on task.  He said, "[I]f I didn't tell him what to do, I mean just step after step after step, he'd just look over at me and be walking in circles, just walking in circles.   And we didn't know what this was all about."  AR 45.   The second time he had his son work for him was after his second committal.   When asked if he thought his son could perform any kind of work, Mr. Rohwer said his son has a hard time getting along with people.   He said that Rohwer had started a mowing job at the local cemetery, but that he had to deal with the

cemetery board and finish his son's job on some occasions because he would not get out of bed, was not feeling good or was depressed.  AR 45-46.

## C.   *Vocational Expert's Testimony*

Richard Ostrander testified as a vocational expert at the hearing.  AR 48.  The ALJ asked the VE a hypothetical question of whether work would be available in significant numbers for an individual with certain limitations.  The individual should not work with the public and should have limited co-worker interaction.  AR 49.  He could not perform hazardous jobs and needed unskilled, routine work, without a lot of decision-making.  *Id.*  The VE identified a commercial cleaning job and an industrial cleaning job that would be appropriate for an individual with these limitations and said these jobs existed in significant numbers in the region.  *Id.*  He stated that very little absenteeism was allowed in these positions and a person who would miss more than two days of work a month would not be able to maintain employment.  AR 50.  The ALJ asked if a person would be able to maintain employment if he or she needed to go home for the day or walk around outside of scheduled break times because of psychological symptoms.  The VE indicated this would not be allowed in the types of jobs he identified.

### *Summary of ALJ's Decision*

The ALJ made the following findings:

(1)    The claimant has not engaged in substantial gainful activity since March 23, 2009.

(2)    The claimant has the following severe impairments: bipolar disorder and polysubstance dependence.

(3)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

(4)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Mentally, the claimant is capable of unskilled routine work with decision making responsibilities. He should not work with the public, but could withstand limited interaction with coworkers. The claimant should also not work in hazardous conditions.

(5)     The claimant has no past relevant work.

(6)     The claimant was born on February 22, 1989 and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

(7)     The claimant has at least a high school education and is able to communicate in English.

(8)     Transferability of job skills is not an issue because the claimant does not have past relevant work.

(9)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

(10)    The claimant has not been under a disability, as defined in the Social Security Act since March 23, 2009, the date the application was filed.

AR 12-18.

The ALJ found that Rohwer's mental impairments did not meet the criteria of listings 12.04 for Affective Disorders and 12.09 for Substance Addiction Disorders. AR 13. The ALJ considered the "paragraph B" criteria, which require that the mental impairment result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* The ALJ found that Rohwer had mild restriction in activities of daily living and moderate difficulties with social functioning

and maintaining concentration, persistence or pace. Rohwer had experienced one to two episodes of decompensation, but the Listing requires three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. *Id.*

In calculating Rohwer's RFC, the ALJ considered Rohwer's subjective allegations, Rohwer's father's testimony and third party function report, medical opinions and records, and an assessment from one of Rohwer's former employers. The ALJ noted that although Rohwer has been admitted for inpatient psychiatric hospitalization, these hospitalizations were precipitated by substance use/abuse and noncompliance with prescribed treatment. AR 15. Upon admittance in October 2008, he was assessed a GAF score of 40. However, the ALJ noted that Rohwer acknowledged he was high on drugs at the time and the record showed he had "spiraled downward" due to drug use. Upon release, his GAF score was 65, he was back on his medication and all signs and functioning were described as good and normal. AR 15. Rohwer was committed on May 20, 2009 after becoming noncompliant with his medication. His GAF score was 15 upon committal. *Id.* During hospitalization, his medications were stabilized and he was discharged on June 4, 2009 with a normal mental status and a GAF score of 60. *Id.*

When Rohwer was not using drugs, the ALJ remarked that Rohwer's GAF scores and mental status examinations showed no more than moderate limitations and an RFC consistent with the one established by the ALJ. AR 15. Rohwer's other difficulties, not associated with drug use, were often due to noncompliance with his medication. *Id.* The ALJ noted that the objective evidence failed to establish any significant limitation in Rohwer's ability to engage in normal activities of daily living.

In evaluating the opinion evidence, the ALJ found that the state agency psychological consultants' assessments were fundamentally consistent with the medical evidence of record and the RFC as assessed by the ALJ. AR 16. The ALJ gave partial deference to Rohwer's allegations by including the limitation that he should not work with the public. *Id.*

Finally, the ALJ relied on the assessment from one of Rohwer's past employers who stated Rohwer's work performance was adequate to good and that he did a good job and had a good attitude despite his excessive absences. *Id.* The ALJ reasoned that Rohwer could work on a regular and sustained basis as long as he remained in the parameters of the RFC.

### Disability Determinations and the Burden of Proof

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit

the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003)

(internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### The Substantial Evidence Standard

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it

"possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).  This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)).  The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## Discussion

### A.   Listing Criteria Under Section 12.04

Rohwer argues the ALJ erred in finding he did not meet or exceed the criteria for affective disorders under Section 12.04.  He states his medical records consistently describe conditions and behaviors associated with manic syndrome including hyperactivity, pressure of speech, involvement in activities with a high probability of painful consequences, and psychotic features associated with bipolar disorder, thus meeting the criteria under Section 12.04(A)(2) and (B).  In the alternative, Rohwer argues he meets the criteria under Section 12.04(C)(1), (2), and (3).  He states that although he only needs to meet one of the criteria, he meets or exceeds all three.

The Commissioner responds that the ALJ correctly found that Rohwer's bipolar disorder does not meet the criteria of Section 12.04, and this finding is supported by substantial evidence.  The Commissioner points out that under subpart B, Rohwer does not display any marked limitations in the areas provided and under subpart C, Rohwer's history of a chronic affective disorder has not lasted for at least two years.

"The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A).   Affective disorders are found under Section 12.04 of the listing of impairments and the required level of severity (indicating disability) is met when the requirements in *both* subparts A and B are satisfied, *or* when the requirements in subpart C are satisfied.   20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 (emphasis added).   Subpart A requires "[m]edically documented persistence, either continuous or intermittent" of depressive syndrome characterized by at least four of the listed symptoms or manic syndrome characterized by at least three of the listed symptoms, or bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes.).   *Id.*   Subpart B states that the disorder must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration.[6]   *Id.*

Rohwer has been diagnosed with bipolar disorder and therefore meets the Subpart A criteria.   However, the ALJ found he did not meet any of the Subpart B criteria.   AR 13.   The state agency psychological consultants found Rohwer exhibited no more than moderate limitations in those areas and only suffered one to two episodes of decompensation.   AR 301.   After reviewing the rest of the evidence in the record, the ALJ concluded the state agency psychological consultants' assessments were "fundamentally consistent with the medical evidence of record and with the mental residual functional capacity as established."   AR 16.

---

[6] Repeated episodes of decompensation, each of extended duration means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(4).

The ALJ's finding that Rohwer meets none of the Subpart B criteria is supported by substantial evidence. Rohwer reported he was able to cook simple meals for himself, do laundry, and drive to places by himself, including a friend's house. AR 166-67. He reported he would visit his friend three or four times a week. AR 167. These activities do not indicate marked difficulties in activities of daily living or maintaining social functioning. As for concentration, persistence, or pace, Rohwer's previous employer reported he was "good" at concentrating and remaining on task and understanding and carrying out simple instructions. AR 172. In addition, none of Rohwer's treatment notes indicate his limitations in the three areas exceed the moderate level and he has experienced no more than two episodes of decompensation. The ALJ correctly concluded that Rohwer does not meet the Subpart A and Subpart B criteria.

Subpart C requires a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:"

    1.    Repeated episodes of decompensation, each of extended duration; or

    2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(C).

The Commissioner argues Rohwer does not have a medically documented history of bipolar disorder of at least two years' duration because he alleges disability beginning on March 23, 2009, and the ALJ issued her decision on January 6, 2011.

Alternatively, he argues if Rohwer's first committal on October 30, 2008, is considered as the starting point of his disorder, there are no records showing significant treatment or mental health problems following Rohwer's successful completion of chemical dependency treatment on July 1, 2009. Finally, the Commissioner argues that even if Rohwer does have a medically documented history of bipolar disorder for at least two years, he does not meet one of the three additional listed criteria that are required.

The ALJ apparently considered the "paragraph C" criteria, but omitted her analysis and conclusion. Her decision states, "The undersigned has also considered whether the 'paragraph C' criteria are," and goes no further. Presumably, the ALJ found that the "paragraph C" criteria were not satisfied because she found Rohwer not disabled. Although I have no analysis to consider, I find her implicit conclusion is supported by substantial evidence.

Rohwer's bipolar disorder has a medically documented history of at least two years that causes more than a minimal limitation of ability to do basic work activities and with symptoms or signs currently attenuated by medication or psychosocial support. The regulations do not require a medically documented history of an alleged disability, but a history of a chronic affective disorder. Rohwer was diagnosed with bipolar disorder when he was first committed to the Mental Health Institute on October 30, 2008, so his medically documented history exceeds two years. The Commissioner's other argument is also invalid. Although Rohwer successfully completed inpatient treatment for chemical dependency on July 1, 2009, nothing in the evidence suggests his bipolar disorder suddenly became less serious at this time. Rohwer indicated at the administrative hearing that he still takes medication for this bipolar disorder and without it he would be aggressive and dysfunctional. AR 29. Therefore, Rohwer has a medically documented history of bipolar disorder for at least two years' duration that causes "more than a minimal limitation in his ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(C).

21

However, in order to meet or exceed the "paragraph C" criteria, at least one of the three listed criteria must also be satisfied.  Rohwer has not experienced repeated episodes of decompensation, each of lasting duration, which are defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(4).  Rohwer has only experienced two such episodes.  There is also no evidence of a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(C)(2).  The evidence suggests Rohwer's symptoms stabilized when he was compliant with his medication and not using drugs or alcohol.  Finally, there is no evidence in the record of a current history of one or more years' inability to function outside a highly supportive living arrangement.  Rohwer lives with his parents, but this seems to be more financially-related rather than as a means of controlling Rohwer's symptoms.  *See* C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F) (describing that placement in a hospital, halfway house, board and care facility, or other environment providing a structured and supportive setting may be a way of controlling or attenuating overt symptomatology of chronic mental disorders).  The ALJ's implicit conclusion that Rohwer does not meet or exceed the "paragraph C" criteria is supported by substantial evidence in the record.

Because the ALJ's findings under the listing criteria of section 12.04 are supported by substantial evidence, the ALJ correctly found that Rohwer's impairment was not so severe as to be presumptively disabling under the regulations.


**B.      Hypothetical Question to the VE**

Rohwer also argues the ALJ erred by relying on the VE's testimony that Rohwer could perform other work given Rohwer's history of absenteeism and the little tolerance for absenteeism that exists in the jobs identified by the VE.  Rohwer contends there is

no evidence in the record that would support an inference that he could engage in any kind of work on a systemic basis and cites other evidence in the record that, in his view, contradicts a finding that Rohwer could perform other work.  He states:

> He has never worked above SGA.  He has never held a job for longer than several months.  He has not been able to attend school since the manifestation of his Bipolar disorder.  He has never lived independently.  He has repeated episodes of decompensation with hospitalization.  He can't get dressed everyday.  He was terminated from Godfather's Pizza in 2008 specifically for absenteeism.  He couldn't maintain employment with his own father.  He has been on psychotropic medication continuously since his first hospitalization at Mental Health Institute in 2008.

Pl.'s Br. at 7.

The Commissioner argues the ALJ's hypothetical question to the VE was proper and the VE's testimony constituted substantial evidence that Rohwer could perform other work and was not disabled.  He points out that Rohwer's excessive absenteeism at Godfather's Pizza occurred before his first hospitalization and during a time Rohwer admitted to using drugs.  AR 214-15.  Additionally, the Commissioner argues nothing in the evidence suggests Rohwer's failure to show up to work was a result of his mental impairments.

The ALJ asked the VE a hypothetical involving an individual who should not work with the public and should have limited co-worker interaction.  AR 49.  He could not perform hazardous jobs and needed unskilled, routine work, without a lot of decision-making.  *Id.*  The VE said this individual could perform a commercial cleaning job or an industrial cleaning job and these jobs existed in significant numbers in the region.  *Id.*  He stated that very little absenteeism was allowed in these positions and a person could probably not miss more than two days per month to maintain employment.  AR 50.  The ALJ asked if a person would be able to maintain employment if he or she needed to go home for the day or walk around outside of

scheduled break times because of psychological symptoms.  The VE said this would not be allowed in these jobs.  *Id.*

The ALJ's hypothetical question to the VE must include those impairments that the ALJ finds are substantially supported by the record as a whole.  *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011).  The hypothetical should capture the concrete consequences of the claimant's impairments.  *Id.*  "[A]n ALJ may omit alleged impairments from a hypothetical question posed to a [VE] when '[t]here is no medical evidence that those conditions impose any restrictions on [the claimant's] functional capabilities.'"  *Owen v. Astrue*, 551 F.3d 792, 801-02 (8th Cir. 2008) (quoting *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994)).

The ALJ's hypothetical question included all of Rohwer's credible limitations which are supported by substantial evidence.  There is nothing in the record that attributes Rohwer's excessive absenteeism from work to his mental impairment.  As the Commissioner points out, Rohwer was working at Godfather's Pizza from April to June in 2008.  AR 144.  Rohwer reported to Ms. Hovland that he was using drugs during this time.  AR 215-16.  Rohwer also was not diagnosed with bipolar disorder until November 2008.  From this information it cannot be concluded that Rohwer's absenteeism was due to his bipolar disorder.  There is also no evidence in the record that Rohwer would need to be absent from work more than two days per week because of his mental impairment.  Although he frequently has appointments scheduled to address his low testosterone levels, his bipolar disorder is primarily treated through medication.  Because there is no evidence suggesting Rohwer's absenteeism in past jobs was a result of his mental impairment, the ALJ did not err in relying on the VE's testimony that Rohwer could perform other work.

The evidence cited in support of disability by Rohwer does not demonstrate that the ALJ's decision is not supported by substantial evidence in the record.  While I am required to consider evidence that detracts from the ALJ's decision as well as evidence that supports it, I am not permitted to reverse 'merely because substantial evidence also

exists that would support a contrary outcome." *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

I find that many of the facts provided by Rohwer do not detract from the ALJ's decision and would not support a contrary outcome.   Most of the facts could be attributed to factors other than bipolar disorder.   For instance, Rohwer points out that he has never worked at the substantial gainful activity level, never held a job for longer than several months, has not been able to attend school, has not lived independently, cannot get dressed every day, and could not maintain employment with his father. While there is evidence in the record that Rohwer's bipolar disorder may cause some limitations in the functional abilities required for these events, nothing suggests that Rohwer's bipolar disorder prevents him from doing these things.   Rohwer also points out that he has been on psychotropic medication since 2008.   This does not mean that he is not able to function in the workplace.   In fact, the evidence suggests he is better able to function because of this medication.   The evidence cited by Rohwer does little to detract from the ALJ's decision and does not support a finding of disability.

The ALJ's hypothetical question includes the concrete consequences of Rohwer's impairments and the credible limitations which are supported by substantial evidence in the record.   The ALJ did not err in relying on the VE's response to the hypothetical question in concluding that Rohwer could perform other work and was not disabled.

### *Conclusion*

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Rohwer was not disabled within the meaning of the Act is supported by substantial evidence in the record.   Accordingly, the decision of the ALJ must be **affirmed** and judgment will be entered in favor of the Commissioner and against Rohwer.

**IT IS SO ORDERED.**

**DATED** this 9th day of January, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA